**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| CHRISTOPHER B. S., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 23-cv-00329-SH |
| MARTIN J. O'MALLEY,[1] Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Christopher B. S. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.    Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

---

[1] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin J. O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment(s) meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)–(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

2

Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Background and Procedural History

On or about August 30, 2021, Plaintiff applied for disability insurance benefits under Title II.[2] (R. 489–92.) Plaintiff alleges he has been unable to work since March 18, 2020, due to diabetes, osteoarthritis in knees, hands, and back, sleep apnea, carpal tunnel and cysts in both wrists, depression, and anxiety. (R. 489, 521.) Plaintiff was 43 years old at the time of the ALJ's decision. (R. 342, 489.) Plaintiff has an associate's degree and a variety of past relevant work, including work as an office clerk, mechanical engineering assistant, and truck driver. (R. 354, 382–84, 522–23.)

Plaintiff's claim was denied initially and on reconsideration. (R. 416–20, 428–31.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was conducted on February 15, 2023. (R. 346–93, 432–33.) The ALJ issued a decision on March 6, 2023, denying benefits and finding Plaintiff not disabled. (R. 323–42.) The Appeals Council denied review on June 6, 2023 (R. 1–6), rendering the Commissioner's decision final, 20 C.F.R. 404.981. Plaintiff now appeals.

---

[2] The ALJ decision states the application was made on August 27, 2021. (R. 323.)

### III. The ALJ's Decision

In her decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2023. (R. 325.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 18, 2020. (*Id.*) At step two, the ALJ found Plaintiff had the severe impairments of diabetes mellitus, bilateral carpal tunnel syndrome, osteoarthritis, obstructive sleep apnea, obesity, anxiety, depression, and unspecified trauma or stressor related disorder. (R. 325–26.) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 326–27.) The ALJ then determined Plaintiff had the RFC for light work as defined in 20 C.F.R 404.1567(b) with numerous additional physical and mental limitations. (R. 328.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 328–40.) ‼At step four, the ALJ found Plaintiff unable to perform his past relevant work. (R. 340–41.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as ticket printer/tagger, retail marker, laundry folder, addresser, document preparer, and benchwork patcher. (R. 341–42.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 342.)

### IV. Issues

Plaintiff's brief purportedly raises two issues of errors—(1) that the ALJ failed to properly evaluate the prior administrative medical findings of record; and (2) that the ALJ failed to properly consider Plaintiff's subjective symptoms. (ECF No. 8 at 4.)

However, Plaintiff raises additional alleged errors in the body of his brief, often with very little support. Where the Court can discern a distinct argument that was raised in such a way that it could be addressed by the Commissioner's response, it has been

addressed. Plaintiff's counsel is, <u>once again</u>, cautioned about the failure to comply with LCvR 5-1 and its associated procedures.[3] Blending several claimed errors into a single issue "is a dangerous practice, because we are not required to speculate on what a party is arguing or to craft h[is] arguments for h[im]." *Eacret v. Barnhart*, 120 F. App'x 264, 266 (10th Cir. 2005) (unpublished).[4] The Court will not consider arguments made for the first time in Plaintiff's reply brief.

## V. Analysis

### A. Consideration of Prior Administrative Medical Findings

Plaintiff first contends the ALJ's analysis of the prior administrative medical findings were "improper." (ECF No. 8 at 6–9, 12.) The Court identifies no error.

#### 1. Prior Administrative Medical Findings – Generally

For claims filed on or after March 27, 2017, prior administrative medical findings are evaluated pursuant to 20 C.F.R. § 404.1520c. Prior administrative medical findings are findings "about a medical issue" from the Social Security Administration's "Federal and State agency medical and psychological consultants at a prior level of review" in the claimant's "current claim based on their review of the evidence in [the] case record." 20 C.F.R. § 404.1513(a)(5). Such findings include, among other topics, the existence and severity of the claimant's impairments and symptoms; whether the impairments meet or medically equal a listing; and the claimant's RFC. *Id.*

---

[3] *See Administrative Procedures for Social Security Actions under 42 U.S.C. § 405(g)*, https://www.oknd.uscourts.gov/administrative-procedures-actions-under-42-usc-405g (last visited Aug. 23, 2024). In section II of plaintiff's opening brief, the "plaintiff must list and number each specific error the Commissioner or ALJ made in concluding that the plaintiff was not disabled." *Id.* at 1. In section III, the "plaintiff should include a separate subsection for each error listed in Section II." *Id.*

[4] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

When considering a prior administrative medical finding, an ALJ does not defer or give it any specific evidentiary weight. *Id.* § 404.1520c(a). Instead, the ALJ evaluates the "persuasiveness" of the finding by considering five factors. *Id.* § 404.1520c(a) & (c). These factors include (1) the supportability of the finding; (2) the consistency of the finding; (3) the medical source's relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (4) the medical source's specialization; and (5) any other factors that tend to support or contradict the finding. *Id.* § 404.1520c(c).

In every situation, the ALJ must explain how she considered the first two factors—supportability and consistency.[5] *Id.* § 404.1520c(b)(2). The ALJ is not required to articulate findings on the remaining factors, unless there are two or more findings about the same issue that are equally well-supported and consistent with the record, but not identical. *Id.* § 404.1520c(b)(2)–(3).

### 2. Drs. Doughty and Scott's Mental Findings

Earlier in the administrative process, Drs. Doughty and Scott reviewed the medical record and offered opinions about Plaintiff's mental RFC. (R. 394–402, 405–15.) Both opined that Plaintiff is "unable to interact appropriately or tolerate contact with the public" but can "understand, recall[,] and perform simple and detailed tasks and make related judgments"; "focus for two hour periods with routine breaks and pace and persist

---

[5] Supportability is internal to the medical source—"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her . . . prior administrative medical finding(s), the more persuasive the . . . prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). Consistency is more external—"The more consistent a . . . prior administrative medical finding(s) is with is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the . . . prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

for [an] 8 hour work day and 40 hour work week despite psychological symptoms"; "interact appropriately with coworkers and supervisors to learn tasks, accept criticism, and attend meetings"; and "adapt to a stable work setting and some forewarned changes in a work setting that is not densely populated or fast paced." (R. 400, 413.)

The ALJ summarized the reviewers' findings and found the limitations for simple and detailed tasks, coworker and supervisor contact but no public contact, and no production rate pace persuasive "and supported by the evidence of record to include the consultative examiner findings (Exhibit 3F) and the mental health treatment records (Exhibit 4F; 5F) as outlined in detail" earlier in the decision. (R. 339–40 (citing R. 909–1475).)

Plaintiff does not fault the ALJ's articulation of the persuasiveness finding; instead, Plaintiff attacks the sufficiency of the evidence supporting that finding. Plaintiff argues, "The ALJ's analysis of the state agency psychological reviewers' opinions is improper because it fails to explain why these limitations are persuasive when the reviewers failed to explain, as the other medical sources assessed, that the claimant's cognitive functioning was affected by other medical conditions in combination." (ECF No. 8 at 6 (citation omitted).) Plaintiff then goes on to cite various evidence he believes would support a contrary finding. (*Id.* at 6–10.) But the ALJ considered this evidence. (*See* R. 338 (citing R. 909–11).[6]) Plaintiff is merely disagreeing with the ALJ's interpretation of the evidence and is asking the Court to reweigh the evidence in his favor, which the Court cannot do.

---

[6] "The claimant reported problems with short term memory and concentration associated with depression and diabetes. . . . He did make several errors on a task that required he tap his hand when he heard the letter A. . . . On the delayed recall task, he remembered 2/5 words without cues. . . . The diagnostic impression included . . . rule out mild neurocognitive disorder due to medical condition." (R. 909, 911.)

7

*See Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016) ("[I]n making [the substantial evidence] determination, we cannot reweigh the evidence or substitute our judgment for the administrative law judge's.").[7]

### 3. Drs. Kanaa and Ressler's Physical Findings

Drs. Kanaa and Ressler also reviewed the medical record and offered opinions about Plaintiff's physical RFC. (R. 394–402, 405–15.) Both opined Plaintiff was limited to a full range of light work. (R. 398, 401, 410, 414.) The ALJ summarized the reviewers' findings and concluded they were persuasive. (R. 339–40.) The ALJ found the findings "supported by narratives and generally consistent with the other evidence of record, including imaging studies throughout the record." (R. 340.) However, the ALJ added additional postural, manipulative, and environmental limitations to the decisional RFC. (R. 328.)

Plaintiff again does not attack the ALJ's articulation of the persuasiveness decision and instead attacks the sufficiency of the evidence—"it is unclear how the ALJ *determined* the state agency reviewers' findings were 'supported' by the other evidence, including the evidence she cited." (ECF No. 8 at 12 (emphasis added).) Plaintiff points to the neuropathy in his feet and examination records showing a decreased range of motion in his lower extremities. (*Id.*) Again, however, the ALJ considered this information. (*See* R. 334 (noting April 2022 treatment records showing peripheral neuropathy, "with no significant loss of protective sensation, possible radiculopathy, sinus

---

[7] Plaintiff further maintains the ALJ failed to consider that APRN Angeline Wickliffe found Plaintiff's major depressive disorder was affected by his obstructive sleep apnea. (ECF No. 8 at 6–7.) However, the records Plaintiff cites only show that Ms. Wickliffe diagnosed Plaintiff with major depressive disorder and obstructive sleep apnea, not that one exacerbated the other. (R. 1595–1603.)

8

tarsitis/degenerative joint disease of right subtalar and ankle joint, and onychogryphosis bilateral hallux" (citing R. 2030)); R. 336 (noting July 2021 treatment records showing Plaintiff's knees had "decreased range of motion, pain with palpation, mild swelling, and crepitus present" but with no instability (citing R. 607)).) The ALJ provided a thorough review of the record evidence and found Plaintiff could perform a reduced range of light of work.[8] Plaintiff again is asking the Court to re-weigh evidence. The Court again declines this invitation. *See Smith*, 821 F.3d at 1266.

## B. Consideration of Plaintiff's Subjective Symptoms

Plaintiff next argues the ALJ failed to perform a proper symptom analysis under Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 (Oct. 25, 2017). (ECF No. 8 at 13–15.)

### 1. Symptom Evaluation – Generally

The regulations define "symptoms" as a claimant's "own description" of his "physical or mental impairment." 20 C.F.R. § 404.1502(i). When evaluating symptoms, the ALJ uses a two-step process. *See* SSR 16-3p, 2017 WL 5180304, at *2; *see also* 20

---

[8] In limiting Plaintiff to a reduced range of light work, the ALJ pointed to several pieces of objective medical evidence in the form of imaging, including: (i) a September 2019 x-ray of the lumbosacral spine revealing mild lower thoracic spondylosis, mild lumbar spondylosis and lower lumbar facet arthrosis, and 3.5 mm calcification projecting superiorly adjacent to the right transverse process at L4 (R. 335 (citing R. 1984)); (ii) a September 2019 MRI of the knees revealing a slight patellofemoral joint space narrowing laterally with small lateral patellar osteophytes at both knees, and small calcification projects adjacent to the lateral margin of the right patella on the sunrise patellar view, which may be degenerative or chronic posttraumatic (*id.* (citing R. 1498)); (iii) a January 2020 x-ray of the cervical spine revealing mild degenerative changes and some anterior disc calcifications or ligamentous calcification at C6-C7 (*id.* (citing R. 1973)); (iv) an April 2021 x-ray of the lumbosacral spine revealing mild degenerative changes and atherosclerotic vascular calcification (*id.* (citing R. 1972)); and (v) an April 2022 x-ray of the right ankle revealing no evidence of inflammatory arthropathy, no significant osteoarthritis in foot, and no evidence of acute fracture or malalignment (R. 336 (citing R. 1963, 1965)).

9

C.F.R. § 404.1529. First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). Second, once such impairment(s) are established, the ALJ must evaluate the intensity and persistence of the symptoms so she can determine how they limit the claimant's capacity to work. *Id.* § 404.1529(c)(1).

Factors the ALJ should consider as part of this evaluation include: (i) daily activities; (ii) location, duration, frequency, and intensity of the symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medication; (v) treatment aside from medication; (vi) measures the claimant has used to relieve the symptoms; and (vii) any other factors concerning functional limitations and restrictions due to the symptoms. *Id.* § 404.1529(c)(3)(i)–(vii). The ALJ's findings regarding symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (*quoting Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). However, a "formalistic factor-by-factor recitation of the evidence" is not required where the ALJ states "the specific evidence [s]he relies on" in the evaluation. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Because subjective symptom findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (*quoting Kepler*, 68 F.3d at 391). That is not to say the ALJ may simply make "a single, conclusory statement" that the individual's symptoms have been considered or that the claimant's statements are/are not consistent. SSR 16-3p, 2017 WL 5180304, at *10. Rather, the ALJ's decision "must contain specific

reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

### 2. The ALJ's Symptom Evaluation in this Case

In this case, the ALJ thoroughly summarized Plaintiff's administrative hearing testimony. (R. 328–32.) The ALJ then found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but his statements regarding the intensity, persistence, and limiting effect of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 331.) In making this finding, the ALJ weighed Plaintiff's daily activities (R. 330[9]); the location, duration, frequency, and intensity of his symptoms (R. 329[10]); the precipitating and aggravating factors (R. 330[11]); the type, dosage, effectiveness, and side effects of medications (R. 329–30[12]); the treatment aside from medication (R. 330–31[13]); the other measures used to relieve Plaintiff's symptoms (R. 331–32[14]); and other relevant factors

---

[9] Noting, e.g., that Plaintiff spends time with his family, plays games on his phone, plays with his dog, does minimal housework like dusting and wiping counters, and can only sit for thirty minutes at a time, stand for ten minutes at a time, and walk thirty feet without assistance. (R. 330.)

[10] Noting, e.g., that Plaintiff's pain is mostly in his back and knees. (R. 329.)

[11] Noting, e.g., that walking for extended amounts, sitting too long, and bending or standing up straight makes the pain worse, but sleeping makes the pain better. (R. 330.)

[12] Noting, e.g., that Plaintiff takes meloxicam for inflammation and gabapentin for nerve pain; that there are no side effects; and that the medication helps the pain a little bit. (R. 329–30.)

[13] Noting, e.g., that Plaintiff has tried stretching and massages to help relieve back and knee pain (R. 330) and has received injections in his knees for his osteoarthritis (R. 331).

[14] Noting, e.g., that Plaintiff uses a service dog, which was not prescribed, to help with his balance and monitor his blood sugar. (R. 331–32.)

11

concerning Plaintiff's limitations (R. 331[15]).  This was a proper evaluation under the regulations.

### 3. Plaintiff's Arguments

Plaintiff argues the ALJ erred in finding his administrative hearing testimony inconsistent with the record evidence. (ECF No. 8 at 14–15.)  At the hearing, Plaintiff testified that his family owns a dairy farm, but he is not involved in the farm's day-to-day operations and his wife and daughter perform all the work. (R. 354.)  Plaintiff further stated in a Function Report that he essentially performs a supervisory role on the farm. (R. 571 ("My wife and I discuss day to day activities on the farm and I advise her on things that need to get done.  I am unable to do many of the things like haying, feeding, trimming hooves etc so my wife and daughter takes up the slack."); *see also* R. 369 (Plaintiff testifying at the hearing that, "I tell my wife or my daughter what needs to be done . . . . I'm more or less a consultant.").)  The ALJ considered both the testimony and the Function Report in the symptom analysis, but found these statements were inconsistent with what Plaintiff told his medical providers. (*See* R. 329, 332.)  The ALJ explained that Plaintiff told a provider in June 2021 that he was regularly outside on his farm watering, working on the fence, mowing, or tending to animals (R. 332 (citing R. 2367)) and subsequent records show Plaintiff continued to engage in "lots of activity running his farm" (*id.* (citing R. 2253, 2286, 2327, 2357)).  Thus, while Plaintiff semantically argues "running a farm" does not include tasks like watering or mowing, record evidence exists that shows Plaintiff was not as limited as alleged.  The Court finds no error in the ALJ's symptom analysis.

---

[15] Noting, e.g., that an orthopedic surgeon told Plaintiff he eventually needs to have a knee replacement. (R. 331.)

The Court's review may stop here, and counsel is cautioned that future opinions may stop after consideration of the "issues" raised on appeal, regardless of the myriad bits of law or argument sprinkled throughout the brief on other issues. However, the Court will consider below any other issues it was able to discern from Plaintiff's brief, in the order they were mentioned.

C.   **Due Process**

Plaintiff also confusingly argues the ALJ violated his due process rights by relying on Plaintiff's own testimony that a dental device helps with his sleep apnea. (ECF No. 8 at 11.) Plaintiff testified at the hearing that he received a "device from the dentist that goes in [his] mouth and keeps [his] jaw forward," and that this helps treat his sleep apnea "a little better" than his CPAP machine. (R. 365.) The ALJ noted this testimony but also noted that Plaintiff reported that he remains tired throughout the day. (R. 334.)

Plaintiff's argument appears to be that, because there is no evidence in the record that shows Plaintiff was given a dental device for his sleep apnea, the ALJ cannot rely on Plaintiff's testimony. And, by relying on Plaintiff's testimony, the ALJ is essentially citing a nonexistent post-hearing record, thereby violating Plaintiff's administrative right to due process. (ECF No. 8 at 11.)

The ALJ is allowed to consider a claimant's own testimony in making a disability determination. *See* 20 C.F.R. § 404.1513(a)(4) (defining evidence from nonmedical sources). She did not rely on any post-hearing record. Plaintiff's argument that his due process rights were violated by the ALJ's reliance on his own testimony has no merit.

D.   **Obesity**

Plaintiff last hints that the ALJ may have failed to properly evaluate his severe impairment of obesity pursuant to SSR 19-2p, 2019 WL 2374244 (May 20, 2019). (ECF

13

No. 8 at 12–13.) An ALJ "must consider the limiting effects of obesity when assessing a [claimant's] RFC" and must formulate the "RFC to show the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment." SSR 19-2p, 2019 WL 2374244, at *4.

Plaintiff argues the ALJ failed to explain how his obesity "exacerbated his limitations." (ECF No. 8 at 12–13.) The ALJ did not explicitly state the effect Plaintiff's obesity had on his other impairments. In fact, the ALJ did not discuss SSR 19-2p in her decision and only used the word "obesity" once, when she found it to be a severe impairment at step two. (R. 325.)

Still, the Court can discern that the ALJ evaluated and considered Plaintiff's severe impairment of obesity in forming the RFC. While discussing Plaintiff's osteoarthritis, the ALJ noted that the record reflected Plaintiff stood 5 foot 10 inches tall, weighed 235 pounds, <u>and had a BMI of 33.72</u>. (R. 336 (citing R. 607).) Although the ALJ did not explicitly reference obesity, the medical community defines obesity as a BMI higher than 30.0. SSR 19-2p, 2019 WL 2374244, at *2. Further, the ALJ discussed the prior administrative medical findings of Dr. Ressler. (R. 339–40.) In finding Plaintiff limited to light work, Dr. Ressler explained Plaintiff's BMI was considered in his determination but did not warrant further limitations. (R. 412.) The ALJ found this opinion persuasive and adopted the same limitations in the decisional RFC, except she included additional postural, manipulative, and environmental limitations. (R. 328, 340.) Though limited, the ALJ's discussion shows she considered the effects of Plaintiff's obesity when determining his RFC, and the Court finds no error. *See Steven D. v. Saul*, 18-CV-330-JED-FHM, 2020 WL 5229703, at *2–3 (N.D. Okla. Sept. 2, 2020) (finding reversible error where plaintiff's obesity was never addressed in ALJ's decision, but explaining that

courts typically do not find reversible error where obesity is at least mentioned in discussion of evidence and accounted for in medical opinions that support the RFC determination).[16]

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 19th day of September, 2024.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[16] Plaintiff also takes issue with the ALJ's notation that his service dog, who helps Plaintiff with his balance, "was not prescribed." (ECF No. 8 at 15 (citing R. 329, 332).) Plaintiff is correct that, when an ALJ considers whether a hand-held assistive ambulation device is necessary, it is not required that the claimant have a prescription. *See Staples v. Astrue*, 329 F. App'x 189, 191–92 (10th Cir. 2009) (unpublished). Instead, the relevant inquiry is whether there is "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). At least one court has rejected the idea that a service animal is included in SSR 96-9p's definition of a "hand-held assistive device." *See Shue v. Comm. of Soc. Sec.*, No. 22cv961, 2023 WL 3727935, at *3 (E.D. Va. May 30, 2023). Regardless, none of this matters, because Plaintiff has not alleged the ALJ erred by not including a limitation that Plaintiff needed a hand-held assistive device to ambulate.